IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 15-35615 |
| RAAM GLOBAL ENERGY COMPANY, | § § | (Chapter 11) |
| DEBTOR | § § | |
| IN RE: | § § | CASE NO. 15-35617 |
| CENTURY EXPLORATION NEW ORLEANS, LLC, | § § § | (Chapter 11) |
| DEBTOR | § § | |
| IN RE: | § § | CASE NO. 15-35614 |
| CENTURY EXPLORATION HOUSTON, LLC, | § § § | (Chapter 11) |
| DEBTOR | § § | |
| IN RE: | § § | CASE NO. 15-35616 |
| CENTURY EXPLORATION RESOURCES, LLC, | § § § | (Chapter 11) |
| DEBTOR | § § § | |

**EMERGENCY MOTION FOR ORDER DIRECTING
JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE IN THE UNITED STATES WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN**

**AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[1] file this *Emergency Motion for Order Directing Joint Administration of the Debtors' Chapter 11 Cases* (the "Motion") and respectfully submit the following:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On October 26, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (each a "Case" and collectively, the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[1] The Debtors are RAAM Global Energy Company [2973], Century Exploration New Orleans, LLC [4948], Century Exploration Houston, LLC [9624], and Century Exploration Resources, LLC [7252].

**EMERGENCY MOTION FOR ORDER DIRECTING**
**JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**   **Page 2 of 16**
US 3410145v.4

5. As of the date hereof, an official committee of unsecured creditors has not been appointed in the Cases.

## EMERGENCY CONSIDERATION

6. The Debtors request emergency consideration of this Motion. The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations. Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' First Day Hearings.

## STATEMENT OF FACTS

**A.     Business Overview**

7. RAAM Global Energy Company ("RAAM") is an independent oil and natural gas exploration and production company engaged in the exploration, development, production, exploitation, and acquisition of oil and natural gas properties. The other Debtors are wholly-owned subsidiaries of RAAM, and RAAM provides administrative, technical, financial, and strategic planning support to their subsidiaries.

8. The Debtors' producing assets are located offshore in the Gulf of Mexico and onshore in Louisiana, Texas, Oklahoma, and California, and the Debtors maintain offices in Lexington, Kentucky and New Orleans, Louisiana. The Debtors own an office building in Houston, Texas. As of September 30, 2015, the Debtors had estimated total proved oil and natural gas reserves of 8,570 MMBoe (26% oil). For the six months ended June 30, 2015, the Debtors' net daily production averaged 7,116 barrels of oil equivalent per day (BOEPD), which generated revenue of approximately $33.4 million.

9. The Debtors have traditionally focused on acquiring assets in and around the United States Gulf Coast. Over the last decade the Debtors have worked to diversify their asset base through the acquisition and development of both conventional onshore assets and long-lived unconventional resource plays that are capable of supporting sustainable growth. The Debtors' projects during 2014 and the first half of 2015 were focused on three main areas: shallow waters offshore, onshore conventional assets in Texas, and conventional and unconventional assets in California and the Mid-Continent area. In recent years, the Debtors have invested close to $100 million on large 3-D seismic surveys in the Gulf of Mexico and onshore in Louisiana and Texas in order to enhance their prospect generation capabilities, and the Debtors have invested over $1.5 billion in developing oil and gas assets since their inception.

10. The Debtors' current drilling program focuses on their core area in Breton Sound located offshore in State of Louisiana waters. This has historically been a very successful field for the Debtors, and the Debtors recently completed a successful well that is currently in production. The Debtors presently have an ongoing development portfolio of prospects that it desires to drill.

11. Additional information concerning the Debtors and their financial condition and results of operations, on a consolidated basis, can be found in RAAM's annual, quarterly, and current reports filed with the Securities and Exchange Commission ("SEC") through May 5, 2015, which can be accessed at www.sec.gov and at RAAM's website, http://www.raamglobal.com/.[2]

---

[2] On May 5, 2015, RAAM filed Form 15 with the SEC to notify the Commission of its desire to terminate the filing of registration statements and related reports required under the Securities Exchange Act of 1934. Prior to that time, RAAM was a voluntary filer with the SEC.

**B.     Common Stock**

12.    RAAM is a privately held company, and as of September 30, 2015, RAAM had 61,433 outstanding shares of common stock.  Howard Settle, RAAM's Chairman, and former Chief Executive Officer and President, holds approximately 48% of RAAM's outstanding common stock.  As of that date, RAAM's directors and executive officers as a group (eight persons that include Mr. Settle) held approximately 66% of RAAM's common stock.

**C.     Secured Debt**

13.    On September 12, 2014, Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC entered into a Fifth Amended and Restated Credit Agreement with Wilmington Trust, National Association, as administrative agent and the lenders party thereto (the "Fifth Amended and Restated Credit Agreement"), and RAAM entered into the Fourth Amended and Restated Guaranty in connection therewith.  The Fifth Amended and Restated Credit Agreement provides the Debtors with an $85.0 million term loan facility (the "Term Loan Facility") that is secured by a first lien on substantially all of the Debtors' real and personal property (with certain exceptions).  As of September 30, 2015, approximately $63.8 million was outstanding under the Term Loan Facility.

14.    On September 24, 2010, RAAM completed an offering of $150.0 million senior secured notes at a coupon rate of 12.5% (the "Original Notes").  On July 15, 2011, RAAM completed the issuance and sale of $50.0 million aggregate principal amount of additional 12.5% Senior Notes (the "Additional Notes").  The Additional Notes have identical terms, other than the issue date and issue price, and constitute part of the same series as the Original Notes.

15.    On April 11, 2013, RAAM successfully completed the issuance and sale of $50.0 million aggregate principal amount of additional 12.5% senior secured notes due 2015 (the "New

Additional Notes," and together with the Original and Additional Notes, the "Notes"). The New Additional Notes are additional notes issued pursuant to the indenture dated as of September 24, 2010 (the "Base Indenture"), pursuant to which RAAM issued the Original and Additional Notes, as supplemented by the First Supplemental Indenture dated as of July 15, 2011 (the "First Supplemental Indenture"), the Second Supplemental Indenture dated as of April 11, 2013 (the "Second Supplemental Indenture"), and the Third Supplemental Indenture dated as of April 11, 2013 (the "Third Supplemental Indenture," and together with the Base Indenture, First Supplemental Indenture and the Second Supplemental Indenture, the "Indenture"). The New Additional Notes have identical terms, other than the issue date and issue price, and constitute part of the same series as the Original and Additional Notes. As of September 30, 2015, a total of $238.0 million notional amount of the Notes was outstanding.

16. The Notes are guaranteed on a senior secured basis by Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC. The Notes and the guarantees are secured by a security interest in substantially all of the Debtors' assets to the extent they constitute collateral under the Term Loan Facility, subject to certain exceptions. Pursuant to an Intercreditor Agreement, the lien securing the Notes is subordinated and junior to liens securing the Term Loan Facility.

17. The Debtors did not make the scheduled interest payment to the holders of the Notes that was due on April 1, 2015 which was a default under the Indenture. This non-payment also constituted a default under the Fifth Amended and Restated Credit Agreement. Total unpaid and accrued interest at July 31, 2015 was $25.4 million.

18. On April 30, 2015, the Debtors entered into the *Forbearance Agreement to 12.50% Senior Secured Notes Indenture* with holders of approximately 94% of the face value of

the Notes and the *Forbearance Agreement and Second Amendment to the Fifth Amended and Restated Credit Agreement* with Wilmington Trust, National Association, as administrative agent, and the lenders under the Term Loan Facility (collectively, and as amended, the "Forbearance Agreements"). The Forbearance Agreements expired on September 14, 2015.

### D.     Other Significant Obligations

19.     The Debtors have a promissory note dated August 8, 2005 with GE Commercial Finance Business Property Corporation ("GECF") related to the construction of their Houston office building. On October 1, 2012, EverBank purchased GECF and is now known as Business Property Lending, Inc. The balance owed to EverBank was $2.3 million at September 30, 2015. The note requires monthly installments of principal and interest in the amount of approximately $27,000 until September 1, 2025.

20.     Century Exploration New Orleans, LLC and the Bureau of Ocean Energy Management ("BOEM") entered into various leasing agreements for specific exploration and production activity. Century Exploration New Orleans, LLC is required to obtain one or more surety bonds in order to secure Century Exploration New Orleans, LLC's performance under the obligations relating to such leasing agreements. Ace American Insurance Company ("ACE") agreed to issue certain of such bonds in the estimated aggregate amount of $39,630,000 in favor of BOEM and as required by BOEM under the leasing agreements. In connection with its issuance of such bonds, ACE and Century Exploration New Orleans, LLC entered into the Funds Disbursing Agreement dated October 23, 2014, and a related Escrow Agreement with Bank of America as escrow agent (collectively, the "ACE Bonding Agreement"), that requires Century Exploration New Orleans, LLC to provide funds for the escrow as security for ACE. The ACE Bonding Agreement contemplates the Debtors funding $750,000 per month until March 31, 2017

into an escrow account for the benefit of ACE, and the balance of such escrow account is approximately $9.9 million as of September 30, 2015. As of the Petition Date, the Debtors believe they are fully in compliance with the applicable regulatory requirements.

21. In the ordinary course of business, the Debtors utilize an assortment of vendors, including drilling contractors, labor and repair contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers, professionals, and employee benefits providers. As of the Petition Date, unsecured trade and vendor claims aggregate approximately $3.3 million for all of the Debtors, which amount excludes deficiency claims for any secured creditors, if any.

E.   **Events Leading to Chapter 11**

22. A confluence of factors in 2014 and 2015 led to the Debtors' need to pursue a financial restructuring.

23. First, there has been a historic decline in the prices of crude oil and natural gas since the summer of 2014. These declines have adversely affected the Debtors' revenues and cash flows from operations. The Debtors' realized pricing is primarily driven by market prices for crude oil and natural gas. The Debtors historically engaged in derivative activities that primarily included the use of floors, costless collars, and futures transactions in order to minimize the downside risk from adverse price movements but allow for the realization of upside profits if available. The Debtors' derivative counterparties were limited to their secured lenders, which helped to minimize any potential non-performance risk. On April 20, 2015, the Company liquidated its hedge positions for $10.8 million and used those funds to reduce the outstanding amount owed under the Term Loan Facility.

24. Second, although the Debtors have actively worked with investment banking advisors to refinance the Notes, due to the current economic environment the Debtors have been unable to raise cash or identify capital resources from other sources such as bank funding, private investment, or the public debt and equity markets.

25. Third, during September 2013, the Debtors determined that they could not meet the financial certifications required to obtain permits to develop its offshore Ewing Banks 920 (EB 920) Project in the Gulf of Mexico, due in large part to the substantially increased Worst Case Discharge assumptions imposed by BOEM. As a result, the proved undeveloped reserves associated with the EB 920 Project no longer met the requirements of reasonable certainty to remain booked as proved reserves at the end of the third quarter of 2013 which adversely impacted the Debtors' reserves and impacted the Debtors' ability to refinance the Notes. This resulted in a write-off of 8.4 million barrels of oil and largely contributed to a ceiling test write-down of $277 million and an after-tax loss of $186 million for the nine months ended September 30, 2013.

26. Fourth, in May of 2013, the Flipper Field in Texas suffered a catastrophic collapse. In December 2012, this field was producing 1,960 BOEPD and in May 2013, after all four wells were severely damaged, the Field was producing 166 BOEPD – a loss of 1,794 BOEPD. Furthermore, the Company was forced to direct much of its technical efforts and drilling capital in 2013 and 2014 to drilling new wells to reestablish production, hold the leases, and maintain the reserves.

27. The combination of these factors has impaired the Debtors' liquidity and compelled the Debtors to seek a restructuring of their liabilities in order to maximize the value of their assets for the benefit of their creditors and other constituencies.

28. The Debtors previously sought to restructure their liabilities pursuant to an exchange offer and consent solicitation that was initiated on June 4, 2015 (the "Exchange Offer"). The Exchange Offer contemplated, among other terms, that if holders of all Notes tendered their Notes in the Exchange Offer, such holders of Notes would receive their pro rata share of $50,000,000 in the aggregate principal amount of new notes maturing on June 30, 2019 and an aggregate amount of 1.17 million shares of RAAM's common stock, which would represent 95% of the outstanding shares of RAAM's common stock following the Exchange Offer, subject to dilution pursuant to the exercise of certain warrants. The closing of the Exchange Offer was conditioned, among other things, on at least 99% of the aggregate principal amount of outstanding Notes having been validly tendered and not validly withdrawn in the Exchange Offer (the "Minimum Tender Condition").

29. The Exchange Offer terminated on August 20, 2015. Holders of approximately 94.77% of the principal amount of outstanding Notes tendered their Notes to be exchanged; however, this was insufficient to meet the Minimum Tender Condition.

30. The combination of the factors noted above and the failure of a sufficient number of holders of Notes to tender their Notes in the Exchange Offer to meet the Minimum Tender Condition compelled the Debtors to negotiate with their creditors regarding Chapter 11 proceedings in order to address liquidity concerns and maximize the value of their assets for the benefit of their creditors and other constituencies.

31. For the last several months, the Debtors and their investment bankers have undertaken a thorough marketing process seeking third party stalking horse bidders. The Debtors were at one point close to finalizing a purchase agreement with a stalking horse bidder for a portion of its assets, but the potential agreement fell through due to market conditions.

While there remains interest in the Debtors' assets by third parties, the Debtors have been unable to secure an acceptable third party stalking horse bid at this time after a significant marketing process.

32. The Debtors are presently negotiating a credit bid stalking horse purchase agreement with the holders of approximately 99% of the outstanding debt under the Term Loan Facility, and the Debtors are seeking to present a credit bid stalking horse purchase agreement and bid procedures to the Court before November 6, 2015. Such credit bid stalking horse purchase agreement and bid procedures will create a defined sale process, and the Debtors hope that interested parties will bid on its assets in such process to maximize the value of their estates.

## RELIEF REQUESTED

33. The Debtors seek an order consolidating the administration of the Cases for procedural purposes only as follows:

   a. One docket shall be maintained for the Cases, under the case number assigned to RAAM Global Energy Company.

   b. All pleadings, orders, and other papers filed shall be captioned *In re RAAM Global Energy Company, et al.*, Case No. 15-35615 (Jointly Administered).

   c. The Office of the United States Trustee ("UST") shall conduct joint informal meetings with the Debtors, as required, and a joint first meeting of creditors.

   d. One plan and disclosure statement may be filed for all of the Cases by any plan proponent; however, substantive consolidation of the Debtors' estates is not being requested at this time.

   e. Unless otherwise required by the Court, each Debtor will file separate schedules of assets and liabilities and statements of financial affairs, and, as applicable, lists of equity security holders.

      f.      Proofs of claim filed by creditors of any Debtor shall reflect the caption and case number of the Debtor to which the claim relates and in which Case such claim is to be filed.

      g.      A separate claims register shall be maintained for each Debtor.

## **BASIS FOR RELIEF REQUESTED**

34.    Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides for the joint administration of cases involving a debtor and its affiliates that are pending before the same court. FED. R. BANKR. P. 1015(b). An "affiliate" is an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. 101(2).

35.    The Debtors are related. RAAM Global Energy Company is the direct parent and sole equity interest owner of Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC. Accordingly, the Debtors are "affiliates," as that term is defined by Bankruptcy Code § 101(2). Therefore, joint administration of the Cases is appropriate under Bankruptcy Rule 1015(b).

36.    The Debtors anticipate that notices, applications, motions, other pleadings, hearings, and orders in the Cases may affect all of the Debtors. If each Case were administered independently, there would be a number of duplicative pleadings and overlapping service. This unnecessary duplication of identical documents would be wasteful of the resources of the Debtors' estates, as well as the resources of this Court and of other parties in interest.

37.    Joint administration will permit the Clerk of the Court to use a single general docket for all of the Cases and to combine notices to creditors and other parties in interest by ensuring that all parties in interest will be able to review one docket to stay apprised of the various matters before the Court regarding all of the Cases.

38. Moreover, supervision of the administrative aspects of the Cases by the UST will be simplified. Therefore, joint administration will promote the economical and efficient administration of the Debtors' estates to the benefit of the Debtors, their creditors, the UST, and the Court.

39. Joint administration will not give rise to any conflict of interest among the Debtors' estates. The rights of the Debtors' respective creditors will not be adversely affected by the proposed joint administration because the Debtors will continue as separate and distinct legal entities and will continue to maintain separate books and records. Each creditor will be required to file a proof of claim against the applicable estate in which it allegedly has a claim or right and will retain whatever claims or rights it has against the particular estate. The recoveries of all creditors will be enhanced by the reduction in costs resulting from joint administration of the Cases. The Court will also be relieved of the burden of scheduling duplicative hearings, entering duplicative orders, and maintaining redundant files.

40. A proposed consolidated caption for all notices, applications, motions, and other pleadings is set forth below. The Debtors submit that all parties' use of the simplified caption below will eliminate cumbersome and confusing procedures and ensure a uniformity of pleading identification.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 15-35615** |
| | § | |
| **RAAM GLOBAL ENERGY COMPANY,** | § | **(Chapter 11)** |
| *et al.* | § | |
| | § | **JOINTLY ADMINISTERED** |
| **DEBTORS** | § | |

**EMERGENCY MOTION FOR ORDER DIRECTING**
**JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**          Page 13 of 16
US 3410145v.4

41. The Debtors also seek this Court's direction that a notation substantially similar to the following be entered on the docket of each of the Cases to reflect the joint administration of the Cases:

> An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of RAAM Global Energy Company, Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC. The docket in Case No. 15-35615 should be consulted for all matters affecting the case.

42. No administrative or scheduling orders previously entered in the Cases will require modification if this Motion is granted. Mailing lists in each of the Cases will be consolidated for future noticing requirements.

43. No prior motion for the relief requested herein has been made to this or any other Court.

## NOTICE

44. Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors; (c) counsel to the Debtors; (d) counsel to the lenders under the Term Loan Facility; (e) counsel to ACE; (f) counsel to certain holders of the Notes; (g) counsel to the administrative agent under the Term Loan Facility; (h) counsel to the indenture trustee and collateral agent under the Notes; (i) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (j) those persons who have formally appeared in the Cases and requested service pursuant to Bankruptcy Rule 2002; (k) the Securities and Exchange Commission; (l) the Internal Revenue Service; and (m) all other applicable government agencies to the extent required by the Bankruptcy Rules and the Bankruptcy Local Rules.

## PRAYER

The Debtors respectfully request that the Court enter an Order directing that the Cases be consolidated for procedural purposes only and providing for the joint administration thereof. The Debtors further request that the Court grant them such other and further relief to which they may be justly entitled.

Dated:  October 26, 2015

                        Respectfully submitted,

                        **VINSON & ELKINS LLP**

                        By:  */s/ Bradley R. Foxman*
                             Harry A. Perrin, SBT # 1579800
                             John E. West, SBT # 21202500
                             Reese A. O'Connor, SBT # 24092910
                             First City Tower
                             1001 Fannin Street, Suite 2500
                             Houston, TX 77002-6760
                             Tel:  713.758.2222
                             Fax:  713.758.2346
                             hperrin@velaw.com; jwest@velaw.com;
                             roconnor@velaw.com

                        and

                        William L. Wallander, SBT # 20780750
                        Bradley R. Foxman, SBT # 24065243
                        Trammell Crow Center
                        2001 Ross Avenue, Suite 3700
                        Dallas, Texas 75201
                        Tel:  214.220.7700
                        Fax: 214.999.7787
                        bwallander@velaw.com; bfoxman@velaw.com

                        **PROPOSED ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

     I certify that on October 26, 2015, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                             */s/ Bradley R. Foxman*
                             One of Counsel